*Amb*
*6-29-2010*

JKMcD:2008R00035

FILED    ENTERED
LODGED    RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JUN 2 9 2010

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **v.** | :     CRIMINAL NO. _RDB-10-0386_ |
| |     **Conspiracy to Defraud the United States** |
| **ADAM WAYNE BERG,** | :     **and to Commit Bribery and Steal Gov't** |
| **JEFFREY MARK HARMON,** |     **Property (18 U.S.C. 371); Bribery** |
| **ROBERT BARRY ADCOCK, and** | :     **(18 U.S.C. 201(b)(2)(B); Theft of Gov't** |
| **BERG BROS RECYLING, INC.,** |     **Property (18 U.S.C. 641); False** |
|        **Defendants.** | :     **Statements (18 U.S.C. 1001); Aiding &** |
| |     **Abetting (18 U.S.C. 2); Forfeiture.** |

...oooOooo...

**INDICTMENT**

**COUNT ONE**

The Grand Jury for the District of Maryland charges:

1. At all times material to this Indictment, the National Security Agency [hereafter "NSA"] was a component of the United States Department of Defense located at Ft. Meade, Maryland. Its functions include protecting the national security of the United States and producing foreign signals intelligence information.

2. At all times material to this Indictment, NSA had significant renovations to its buildings, which produced metals which could be recycled.

3. At all times material to this Indictment, the defendant **ROBERT BARRY ADCOCK** [hereafter **"ADCOCK"**] was a civilian employee of NSA who worked in the facilities and logistics department as a contracting officer's representative. As a contracting officer's representative, **ADCOCK** had responsibility for a waste removal contract, including removal of recyclable metals.

1

4.  At all times material to this Indictment, the defendant **ADAM WAYNE BERG** [hereafter "**BERG**"] was an owner of **BERG BROS RECYCLING, INC**., [hereafter "**BERG BROS**"], 1401 West Hamburg Street, Baltimore, MD, 21230, a company which received, processed and sold metal recyclables, including iron, copper and aluminum.

5.  At all times material to the Indictment,  **BERG** handled the finances for **BERG BROS** and sold the recyclable metal which the company collected.

6.  At times material to this Indictment, the defendant **JEFFREY MARK HARMON** [hereafter "**HARMON**"] was president of **BERG BROS** and responsible for finding "customers" for **BERG BROS**, which means finding individuals and companies who wanted to sell metal recyclables to **BERG BROS**.

7.  At all times material to this Indictment, NSA contracted with Waste Management to haul trash from NSA.  NSA paid Waste Management to supply roll off containers at NSA, and to supply trucks and drivers to haul the trash, including metal recycling, to its destination.  Waste Management submitted invoices to NSA for supplying and hauling every container of metal to be recycled at the rate of $150 - $154.35 per roll off container.

8.  At all times material to this Indictment, when Waste Management delivered metals for recycling from NSA to **BERG BROS**, **BERG BROS** was obligated to weigh the Waste Management trucks both full weight and empty weight, calculate the value of the metal recyclables by weight, and remit to NSA the value of the recyclable metal.

9.  At times material to this Indictment, SRK was a dormant, inactive company controlled by a relative of **ADCOCK**.

## THE CHARGE

10.  From in and around March 2004 to in and around June 2006 in the District of Maryland, the defendants

**ADAM WAYNE BERG, JEFFREY MARK HARMON, ROBERT BARRY ADCOCK, AND BERG BROS RECYCLING,**

with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, and confederate to

a.  Defraud NSA and the United States of money and property and impair, impede, obstruct and defeat the lawful functions of NSA and the United States in managing the removal and sale of metal recycling from NSA,

b.  Commit an offense against the United States, specifically,

(1) being a public official (namely **ADCOCK**), directly and indirectly, to corruptly demand, seek, receive, accept and agree to receive and accept anything of value personally and for any other person and entity from **BERG, BERG BROS,** and **HARMON**  in return for (a) being influenced to commit and aid in committing, and collude in, and allow, any fraud, and make opportunity for the commission of any fraud on the United States and (b) being induced to do and omit to do any act in violation of the lawful duty of such official, in violation of Title 18, United States Code, Section 201 (b)(2)(B) and (C), and

(2) to embezzle, steal and knowingly convert to their use and the use of another, and without authority sell, convey and dispose of money and anything of value of the United States and NSA, of a value in excess of $1,000,  in violation of Title 18, United States Code, Section 641.

## OBJECT OF THE CONSPIRACY

11. It was the object of the conspiracy for **ADCOCK**, to receive money from **BERG BROS, BERG, and HARMON** in order to insure that **ADCOCK** would direct Waste Management truck drivers to deliver a steady stream of metal recyclables from NSA to **BERG BROS**, to inadequately supervise the payment by **BERG BROS, BERG, and HARMON** to NSA for the value of the metal recyclables, and to locate metal recyclables for **BERG BROS, BERG and HARMON** to steal from the United States.

## MANNER AND MEANS OF THE CONSPIRACY

In furtherance of the conspiracy and to effect its objects, the defendants employed the following manner and means:

12. **ADCOCK,** acting as the contracting officer's representative, directed Waste Management drivers to take metal recyclables to **BERG BROS,** thereby insuring a stream of metal for **BERG BROS.**

13. **ADCOCK** failed to insure that **BERG BROS, BERG and HARMON** paid NSA for the full value of the metal recyclables thereby increasing the profit on the NSA metals to **BERG BROS**.

14. **ADCOCK** located copper and other metal belonging to NSA but located at Ft. Meade and directed the Waste Management drivers to pick up the metal and deliver it to **BERG BROS.**

15. **BERG BROS, BERG and HARMON** received the copper and other metal from Ft. Meade and NSA, failed to pay NSA for the full value of the metal received, and diverted part of the money to illicitly pay **ADCOCK** in cash and in checks.

4

16. To conceal the payment of money to **ADCOCK**, **BERG** and **HARMON** caused **BERG BROS,** to issue checks to SRK, which had no business other than the receipt of illicit payments.

17. At times, the **BERG BROS** check to SRK was delivered to **ADCOCK**; at other times, **BERG** and **HARMON** caused the **BERG BROS** check to SRK to be cashed and delivered the cash to **ADCOCK**. In all, **BERG** and **HARMON** caused **BERG BROS** to deliver over $100,000 in bribes and payments to **ADCOCK**.

18. In and around April 2006, **HARMON** changed employment from **BERG BROS** to a new metal recycling company. Thereafter, **HARMON** caused cash, or cash loaded onto an ATM card, to be delivered from the new company to **ADCOCK**.

## OVERT ACTS

19. In furtherance of the conspiracy and to effect its objects, in the District of Maryland, the following overt acts were committed.

A. On or about May 13, 2004, **BERG** caused check number 22752 to be issued by **BERG BROS** payable to SRK in the amount of $26,006.00 and delivered to **ADCOCK**.

B. In and around May 13 - June 12, 2004, **ADCOCK** sponsored a visit by **BERG** and **HARMON** to the secure NSA facility.

C. On or about October 14, 2004, a **BERG BROS** truck picked up metal at Ft. Meade and delivered it to **BERG BROS**.

D. On or about October 26, 2004, **BERG** caused check number 23971 to be issued by **BERG BROS** payable to SRK in the amount of $8,316.80 and delivered to **ADCOCK**.

E. On or about January 25, 2005, a **BERG BROS** weigh ticket marked "NSA" was

altered to show "SRK" as the customer's company name.

F.  On or about February 17, 2005, **HARMON** caused check number 24674 to be issued by **BERG BROS** payable to SRK in the amount of $3,874.02 and delivered to **ADCOCK**.

G.  On or about April 8, 2005, **HARMON** caused check number 24980 to be issued by **BERG BROS** payable to "Cash" in the amount of $2,041.60, caused the check to be cashed at the bank, and delivered the cash to **ADCOCK**.

H.  On or about May 11, 2005, **BERG** caused check number 12622 to be issued by **BERG BROS** payable to "Cash" in the amount of $2,240.30, caused the check to be cashed at the bank, and delivered the cash to **ADCOCK**.

I-N.  Counts 3 - 8 are incorporated as Overt Acts in furtherance of the conspiracy.

18 U.S.C. §371

## COUNT TWO

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1 - 9 are incorporated by reference as though fully set forth.

2. From in and around March 2004 to in and around June 2006 in the District of Maryland,

### ROBERT BARRY ADCOCK

a public official, directly and indirectly did corruptly seek, receive, accept and agree to receive and accept things of value, that is cash and checks from

### BERG BROS, ADAM WAYNE BERG, AND JEFFREY MARK HARMON

in the approximate amount of $110,000.00 in return for being influenced to commit and aid in committing and to collude in and allow a fraud and make opportunity for the commission of a fraud on the United States, that is the fraudulent directing of metal for recycling from NSA to **BERG BROS**, the underpayment for metal recycling, and the failure to account for metal recycling at NSA.


18 U.S.C. §201(b)(2)(B) and 18 U.S.C. §2

## COUNT THREE-EIGHT

The Grand Jury for the District of Maryland further charges:

1.  The allegations of Count One, Paragraphs 1-9 and 11-17 are incorporated by reference as though fully set forth.

2.  In and around the dates set forth below in the District of Maryland,

**ROBERT BARRY ADCOCK, ADAM WAYNE BERG,  JEFFREY MARK HARMON,**

**and BERG BROS RECYCLING, Inc.,**

aiding and abetting each other, embezzled, stole and converted to their own use and the use of another, money and a thing of value of the United States and NSA, namely recyclable metals and the payments for metal recycling which should have gone to NSA, but instead were used to fund a bribe of **ROBERT BARRY ADCOCK**, in amounts in excess of $1000.

| COUNT | DATE | AMOUNT | CHECK NUMBER |
|---|---|---|---|
| 3 | 9/22/2005 | $1,586.55 | 25651 |
| 4 | 9/27/2005 | $1,622.00 | 25672 |
| 5 | 10/6/2005 | $1,249.64 | 25728 |
| 6 | 10/20/2005 | $1,650.40 | 12980 |
| 7 | 11/23/2005 | $1,792.00 | 25882 |
| 8 | 1/27/2006 | $1,675.00 | 13102 |

18 U.S.C. §641; 18 U.S.C. §2

8

## COUNT NINE

The Grand Jury for the District of Maryland further charges:

On or about November 4, 2005, in the District of Maryland ,

**ROBERT BARRY ADCOCK,**

the defendant, in a matter within the jurisdiction of the executive branch of the Government of

the United States,  that is the National Security Agency, which is part of the Department of

Defense, knowingly and willfully made a materially false, fictitious and fraudulent statement on

his confidential financial disclosure form, that is, his Office of Government Ethics Form 450, in

which he claimed to have no income other than his government salary for the fiscal year October

1, 2004 - September 30, 2005, when he then and there well knew that he had received substantial

payments from **BERG BROS, BERG and HARMON.**

18 U.S.C. §1001

## FORFEITURE

1. The allegations contained in Counts One through Nine are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. § 2461(c), in the event of the defendants' conviction under Counts One through Nine of this Indictment.

3. As a result of the offenses set forth in Counts One through Nine, the defendants,

**ROBERT BARRY ADCOCK, ADAM WAYNE BERG,  JEFFREY MARK HARMON,**

**and BERG BROS RECYCLING, Inc.,**

shall forfeit to the United States any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violations.

28 U.S.C. § 2461(c)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1956(c)(7)
18 U.S.C. § 1961(1)
21 U.S.C. § 853

## SUBSTITUTE ASSETS

4. If any of the property described in Paragraph 3 above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without

        difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code § 853(p) to seek

forfeiture of any other property of the defendants up to the value of any property described in

Paragraph 3 above.


28 U.S.C. § 2461(c)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1956(c)(7)
18 U.S.C. § 1961(1)
21 U.S.C. § 853(p)

*Rod J. Rosenstein*
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED    SIGNATURE REDACTED

Foreperson

Date: *June 29, 2010*

11