IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. RDB-10-0386 |
| ROBERT ADCOCK | * | |

\*\*\*\*\*\*\*\*\*

DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

Now comes Robert Adcock, Defendant, by and through Flynn M. Owens, Esquire, and Rubin & Owens, P.A., his attorneys, and hereby submits his reply to the Sentencing Memorandum previously filed by the Government in the above-captioned matter. In so doing, Defendant respectfully urges this Honorable Court to impose a sentence below his advisory guidelines range. More specifically, Defendant respectfully urges this Honorable Court to impose a non-incarcerated sentence. If the Court cannot see its way clear to impose a non-incarcerated sentence, Defendant alternatively requests a sentence not to exceed that imposed upon his co-defendant Jeffrey Mark Harmon, of one year and a day to the custody of the Bureau of Prisons.

<u>BACKGROUND</u>

Defendant awaits sentencing in the above-captioned matter, having previously tendered guilty pleas to conspiracy to receive unlawful payments by a public official and false statement to the United States. Defendant adopts as accurate the Government's recitation of his conduct,

as spelled out in pages 1-5 of its sentencing memorandum. Defendant would merely add that he has been in complete compliance with the conditions of his pretrial release, set at his initial appearance on July 23, 2010.

On December 17, 2010, Defendant memorialized a plea agreement letter, the salient details of which contemplated a final adjusted offense level of 16. Further, by way of a sealed supplement to the agreement, the Government indicated its willingness, under appropriate circumstances, to make a motion, pursuant to U.S.S.G. 5K1.1, for up to a two-level downward departure for substantial assistance, with the defense free to argue for more. In fact, by way of a letter to the Court dated April 18, 2011, the Government has affirmatively committed itself to making such a two-level downward departure in this case. Accordingly, Defendant's final adjusted offense level is 14. Based on Defendant's Criminal History Category of I, his advisory guidelines range is 15-21 months.

In its sentencing memorandum in the above-captioned matter, the Government urges this Honorable Court to impose a guideline sentence, "to deter government contracting officials from receiving corrupt payments from government contractors and failing in their duty of loyalty to their own agencies." Government's sentencing memorandum, at 1. Additionally, at pages 6-7 of its memorandum, the Government cites to other conduct of Defendant, in support of its request for a guideline sentence.

## A BRIEF OVERVIEW OF THE LAW

In <u>United States v. Booker</u>, 543 U.S. 22 (2005), "the Supreme Court held that sentence enhancements under the then-mandatory Sentencing Guidelines violated the Sixth Amendment right to trial by jury." <u>United States v. Mendoza-Mendoza</u>, 597 F.3d 212, 216 (4th Cir. 2010).  As such, "[t]he Court chose to remedy the situation by rendering the Guidelines "effectively advisory." <u>Id</u>. at 216.  Therefore, "[p]ost-<u>Booker</u>, a sentencing court must begin "by correctly calculating the applicable Guidelines range…[,] [which] thus serve as "the starting point and the initial benchmark." <u>Id</u>. at 216.  Notwithstanding, "[t]he ultimate question, however, is whether the sentence is "sufficient, but not greater than necessary" in light of the factors identified in [18 U.S.C.] Section 3553(a)." <u>Id</u>. at 216.  In this post-<u>Booker</u> environment, "[a] court therefore must proceed by giving the parties "an opportunity to argue for whatever sentence they deem appropriate[,]… [and] then "make an individualized assessment based on the facts presented" to see whether the Section 3553(a) factors support either party's claim." <u>Id</u>. at 216.

## <u>18 U.S.C. SECTION 3553(a)</u>

18 U.S.C. Section 3553(a) directs the Court to consider, in fashioning a sufficient sentence, a host of factors, including, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant."  Further, 18 U.S.C. Section 3553(a)(3) requires the Court to consider "the kinds of sentences available," while

Section 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As specified below, application of the Section 3553(a) factors mentioned above to Defendant's case compels a below guidelines range sentence.

<u>HISTORY AND CHARACTERISTICS OF DEFENDANT</u>

Defendant is forty-four years old. Defendant had, past tense, been an employee of the U.S. Department of Defense for twenty-three years. Needless to say, because of his own wrongdoing, Defendant has been terminated from his employ. In candor, Defendant knows how to do nothing else, as he had been employed by the Department of Defense virtually his entire adult life. It also appears safe to say, without fear of being contradicted, that Defendant will never again work for the government, or, for that matter, any entity which contracts with the government. Additionally, while undersigned counsel does not possess a crystal ball, he nonetheless posits the remote likelihood that Defendant will recidivate.

As to his personal life, Defendant is the father of five children, and the grandfather of one. While several of his children have attained the age of majority, Defendant pays monthly child support of $502.62 for his son Noah, and resides with his wife Sheila and their five-year old son, Simon.

In addition to supporting Noah financially, Defendant plays an integral role in his upbringing, as demonstrated by a letter from Noah's mother, Michelle Barnes.  (Defendant's exhibit 1).

Defendant's wife Sheila is a teacher in the Anne Arundel County Public School System.  Mrs. Adcock unfortunately suffers from degenerative disc disease, which has left her severely incapacitated and significantly interferes with her daily activities and level of function.  (See Defendant's exhibit 2-letter from Raymond I. Haroun, M.D.).  As a result, Mrs. Adcock has been placed on a driving restriction for one year, effective April 20, 2011 thru April 19, 2012.  (See Defendant's exhibit 3-letter from Raymond I. Haroun, M.D.).  Due to her physical infirmity, Defendant is solely responsible for driving his wife for both employment and non-employment purposes.  By the same token, Defendant is responsible for the upkeep of the family home, and all sundry matters associated thereto, as well as attending to many of the needs of the couple's minor child.

No better explanation of the perilous circumstances that have been visited upon the Adcock family, as a result of Mrs. Adcock's medical condition, can be offered than Mrs. Adcock's own letter on the subject.  (Defendant's exhibit 4).  As the Court can see, Mrs. Adcock has already had several back surgeries that unfortunately have not alleviated her physical woes.  Additionally, Mrs. Adcock's letter goes on to explain that Defendant is her only source of continued care and transportation, and

that his removal from the home would result in her inability to continue working, as she would be physically unable to get to work.  To make matters worse, the domino effect, were Defendant removed from the home, would cause harm to the Adcock's five-year old child, who would be left with a mother both physically and financially unable to care for him.

Beyond being a bulwark for his wife and their child, Defendant maintains a close and loving relationship with his parents, both in their late seventies, as well.  Defendant's father, Edwin, is diabetic and also wheelchair bound, having lost his legs as a result of an automobile accident, while Defendant's mother, Agnes, labors under back and leg problems.  (See Defendant's exhibit 5-letter from Edwin Adcock).  Due to the myriad physical ailments of both parents, Defendant plays a key role in getting both to their respective medical appointments.

The combined toll of his family issues and his looming sentencing has impacted Defendant also, as he has been diagnosed as suffering from Dysthymic Disorder, a chronically depressed mood that occurs for most of the day more days than not for at least two years.  (See Defendant's exhibit 6-letter from Nancy Niesz Funk, Ph.D.).

Defendant acknowledges the concept that all families suffer when a family member is incarcerated.  Strictly speaking, the Court is sentencing Defendant, not his family.  Having said that, it cannot be denied that the sentence meted out here, as in all cases, will have ripple effects beyond those visited upon the person sentenced.  Defendant simply asks this

Honorable Court, in fashioning an appropriate sentence, to factor in that the ripple effects of incarcerating him for any appreciable period of time will be exacerbated exponentially by the fact that his wife, child, and parents will all lose the safety net he heretofore has provided.

THE KINDS OF SENTENCES AVAILABLE

As noted above, 18 U.S.C. Section 3553(a)(3) directs to Court to consider the kinds of sentences available.  Here presently, with an adjusted offense level of 14 and a Criminal History Category I, Defendant is in Zone D of the Sentencing Guidelines Sentencing Table.  As the Court is aware, those in Zone D must serve whatever sentence is imposed by way of imprisonment.  However, for those in Zone C, the Court has the discretion to substitute up to one half of the term of imprisonment with either community confinement or home detention.  As for those in Zone B, the Court has the latitude to substitute community confinement or home detention for imprisonment, provided that at least one month of the sentence is satisfied by imprisonment.  Finally, for those in Zone A, the Court may do away totally with a sentence of imprisonment.

In the instant matter, Defendant, due to the strain of incarceration upon his family, respectfully requests that this Honorable Court fashion a sentence that will place him in either Zone C, B, or A, thus permitting the Court, if it deems it appropriate, to partially or totally substitute community confinement or home detention for imprisonment.

CONSISTENCY OF SENTENCES AMONG DEFENDANTS WITH
SIMILAR RECORDS WHO ARE GUILTY OF SIMILAR CONDUCT

It has come to undersigned counsel's attention that Jeffrey Mark Harmon, a co-defendant in the above-captioned matter, has already appeared before this Honorable Court for sentencing, at which time a sentence of one year and a day to the custody of the Bureau of Prisons was imposed. Presumably, Mr. Harmon's offense level and Criminal History Category were both similar to Defendant's.[1]

In anticipation that the Government might contend that Defendant, by virtue of the fact that he was a public official, deserves a harsher sentence than Mr. Harmon, Defendant suggests the wrongdoing of he and Mr. Harmon was symbiotic, in that he could not have acted corruptly but for the overtures to do so made to him by Mr. Harmon. Defendant wishes to stress he is not, in any way, trying to absolve himself of wrongdoing or unduly damn Mr. Harmon. Rather, he simply means to suggest that whether he went off the tracks because of being wooed by Mr. Harmon, or whether Mr. Harmon went off the tracks because he found a willing compatriot in Defendant does not change the fact that both are equally culpable, and therefore, Defendant's sentence, at worst, should be no greater than Mr. Harmon's, and, for the reasons articulated above, should in fact be less.

---

[1] Defendant does not know whether Mr. Harmon received the benefit of a 5K1.1 motion by the Government. If in fact he did not, the Court is urged to consider this as a distinguishing feature, in a positive manner, for Defendant.

8

## OTHER CONDUCT

As mentioned above, the Government, in its sentencing memorandum, listed several matters from Defendant's past that it believes the Court should consider in determining the sentence it will hand down. The first of these matters is the fact that when Defendant married his current wife in 2005, he was still legally married to another woman, and did not legally dissolve that union until two years later. While not condoning bigamy, Defendant wishes to emphasize he was not living with, or engaging in intimate relations with, both women at the same time. Furthermore, Defendant suggests that the nexus between his behavior in this instance and his conduct in the above-captioned matter is tenuous, at best.

Next, the Government points to an incident in 1999, where, in an effort to avoid a traffic citation, Defendant told a Baltimore County Police Officer who had pulled him over that he was an NSA agent. While certainly foolish, Defendant again suggests this behavior, which occurred well over a decade ago, is so attenuated from the facts in this case as to make meaningless its consideration as a factor in the sentence to be imposed here. Again, while not condoning his deception in this incident, Defendant cannot help but speculate as to how many drivers have tried to engage in some form of subterfuge in an effort to try to get around a traffic citation? Rhetorically speaking, would such conduct be grist for the sentencing mill if any of those same drivers, years later, found themselves

9

facing sentencing in an entirely unrelated matter?  The answer, at least Defendant hopes, is no.

The Government next points out that Defendant failed to disclose his receipt of monies from Berg Bros Recycling on a government form 450, Confidential Financial Disclosure Report, he filled out in 2003, 2004, and 2005.  Defendant does not deny his lack of candor in this regard, but suggests, to a major extent, his non-disclosure in this area is already factored in to this proceeding by virtue of the fact he has pleaded guilty to making a false statement to the United States, said false statement in fact being his 2005 misrepresentation as to other sources of income on the form 450 he signed that year.

Lastly, the Government mentions that after Defendant was fired, NSA security found a Conex, which was assigned to Defendant, which contained computer parts that had been shipped to the Air Force and were still in their original wrappers.  Here, Defendant is uncertain what to make of this-is the Government alleging deceit, negligence, or some other variety of behavior on Defendant's part?  That being said, Defendant, at least at this juncture, rests on his contention that the discovery of these parts in their original wrappers has no bearing on what sentence the Court should impose.

## CONCLUSION

Defendant unequivocally admits his wrongdoing in the instant matter. In an effort to begin to make amends, Defendant cooperated with the Government in its investigation in this case. Indeed, the Government acknowledges that the knowledge the co-defendant's possessed that Defendant was cooperating, and was willing to testify against them, was instrumental in their decisions to plead guilty, and thereby spare the expense of a trial.

As a result of his own wrongdoing, Defendant has lost a job he held for nearly a quarter of a century, and has gravely diminished his ability to obtain employment going forward. Worse, he has placed his wife, son, and parents, all unintended victims of his wrongdoing, in harms way. As such, even if he were not imprisoned, it could not be gainsaid that Defendant has suffered significant adverse consequences as a result of his misdeeds

In view of the severity of the impact that a term of imprisonment would have on his family members, Defendant respectfully requests that this Honorable Court impose a sentence below his advisory guidelines range. More specifically, Defendant urges the Court to sentence him to a term of probation, conditioned upon a combination of substantial community service, home detention, and a fine. If the Court does not feel a sentence of probation is appropriate, Defendant would ask the Court to

consider a sentence which substitutes some period of community confinement or home detention for imprisonment.  In any event, Defendant respectfully requests a sentence not to exceed that imposed upon co-defendant Jeffrey Mark Harmon.

        Respectfully submitted,


        _____
        FLYNN M. OWENS
        RUBIN & OWENS, P.A.
        1300 Court Square Building
        200 E. Lexington Street
        Baltimore, Maryland 21202
        (410) 727-8710
        Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of May 2011, a copy of the foregoing Defendant's Reply to Government's Sentencing Memorandum, and exhibits thereto, was served via the court's electronic filing system on Joyce K. McDonald, Assistant United States Attorney, 36 S. Charles Street, 4th Floor, Baltimore, Maryland 21201.  It is further certified that a copy of said memorandum and exhibits was mailed to Eleanor Urban, United States Probation Officer, 250 West Pratt Street, Suite 400, Baltimore, Maryland 21201.

        _____
        FLYNN M. OWENS